I gather that we have the two counsels in that case at the bench, right? That's right, Your Honor. Mark Stevenson on behalf of the petitioner. Very good. Let me just mention one thing in housekeeping for those who will come thereafter. I do tend to follow the clock, so watch the time, please. If you would like to reserve time, if you're the appellate, please let me know how much time you'd like to reserve, and I will remind you of that when we get to that point. So with that caveat, let's go ahead with you then, please. Well, thank you, Your Honor. We have submitted substantially on the petition in this manner, Your Honor. We feel that the court is well-versed in the law and the facts on this issue. We would like to address counsel's letter to the court dated December 27, 2007. Counsel, may I ask you to come up here, if you wouldn't mind, please, just so that we can be sure that it's properly recorded for our streaming media? Certainly, Your Honor. I would like to bring to the court's attention a letter submitted by opposing counsel, the U.S. Attorney's Office, regarding the Smith case that was cited in a December 27, 2007 letter, which basically is saying that the Shlope case has been refined to a degree by the court in bank by saying that in order to pass through the actual innocence procedural gateway of Shlope, Smith must show in the Smith case that in light of all the available evidence, this is more likely than not that no reasonable juror would convict him of the relevant crime. However, in reviewing the Smith case, it appears as if the Shlope standard has not been changed at all, that the gateway standard is still the same, and that it is still sufficient to show that if no reasonable juror would have found Kleinex Adams guilty beyond a reasonable doubt, had they known about the two declarations, the two recantations of the two material witnesses in this case, then they would not have found him guilty. That standard is still in effect, and we are still requesting that the court considers that standard in this particular case. In this case, we have two witnesses who were the bedrock of the prosecution's case, in this particular case, who identified Mr. Adams and did so according to their declarations under coercion and under pressure by the police officers in this case. Two rival gang members who basically had an axe to grind with Mr. Adams because he lived in a different area, and who testified just for no other reason than the fact that their friend was killed and that Mr. Adams was from a different area, and would have taken great pleasure in seeing Mr. Adams removed from the community, from their scene, so to speak. And in testifying, that was not brought out at the time of the trial. These men, later on, as they matured, realized that they had lied, and that they had made a mistake, and that it had rested on their conscience. Individually, both men were... Do you know what you just said? Yes, sir. You said, these men, as they matured, recognized it. In other words, they didn't know at the time? At the time, their motivations were different than they appeared to be by way of their declarations. In their declarations, they indicated that their conscience got the best of them, that they had made a mistake, that they had lied and sent an innocent man to prison. And because of that, they wanted to make it right. Both of these men were contacted individually, separately, without the other knowing that they were contacted by our investigators. And they made these statements without knowing that the other man had made that statement. That is significant. And I do believe that had the truth come out during the course of the trial, that the jury would have reached a different verdict, because without those two witnesses identifying Mr. Adams, there would have been no evidence that Mr. Adams was involved in this case. You do realize, though, that your client bears the burden of proof here. You had an evidentiary hearing. We apply an abuse of discretion standard here, do we not? Yes, you do, Your Honor. We're not asking for an evidentiary hearing today. No, I understand that. We don't do those. That is correct. Mr. Adams is seeking just a threshold showing that an actual innocence inquiry is justifiable in this case to avoid a miscarriage of justice. Certainly. Well, you perhaps didn't read – I'm quite familiar with the Smith v. Baldwin case, having written it. But the burden here, counsel, is on you and your client to show that you passed through the schlep gateway. And if you read the Smith v. Baldwin case, you see that there was somebody who changed his mind after he had been himself incarcerated for life on a separate crime. And he decided that things were different. But nonetheless, Mr. Smith could not pass through the gateway under Oregon felony murder rule law. And as you look at the facts in this case, don't you have some trouble showing that your client – his innocence is so clear in this case that no reasonable juror could find him guilty? The only evidence presented other than those two witnesses was the fact that he painted his car a different color and he did move to a different state. What about the fact that these witnesses, in fact, did provide the original testimony? We should totally discount what they said originally? The original testimony by Richard McDowell was conducted. However, I'm not saying that the court is to discount it entirely, but the standard in considering whether or not a defendant or a petitioner passes the schlep threshold test is that whether or not there is evidence that no reasonable jury would not have convicted him had that evidence come back. That's a high standard, isn't it? Yes, it is. But I would say that the testimony that was done earlier and the trial was done under perjury standards and also based on conduct by police officers that had the jury known about at the time would have given a lot less credence to that testimony. But we can also evaluate the alleged change. Some of the testimony or some of the affidavit, for example, this concept that the officer supposedly had him wave his hand toward the pictures and he said, thanks, you picked the right one, that's pretty hard to believe, isn't it? I mean, you'd have to have... I realize there are some cynical views about police officers, but you have to believe that this whole thing that the police came up with was a crock from the beginning in order to believe these affidavits. And the question here is what the jurors would believe. Would they take at face value these recantations and under the... It's not an automatic. Just because somebody comes up with an affidavit 14 years later that the original testimony was not correct. Well, Your Honor... Am I right? That is correct. I wish I could be a director, as in the movies, and tell the deponents and the affiants exactly how to present what they said. You couldn't do it today because you wouldn't have any writers. Because of the writers, right? That is correct. But I take the witnesses, I take the affiants as they are. I didn't coach them. I didn't tell them what to say. They on their own told me that this is what occurred. And I wish in a perfect world we would have exactly what the court needs to see and hear, but we don't. But I do believe that the Schlepp standard doesn't provide that the affiants or the witnesses are perfect in every way and that they totally show a threshold of actual innocence in everything they say. There are some parts of the affidavits that the court can consider that would be in and of itself enough to justify the Schlepp threshold standard. There may be some parts of it that are not. But I do believe that in a case like this where there's been a young man who has been incarcerated for 15 years and with these testimonies that were rendered at that time and the subsequent affidavits, I certainly believe that in this particular case it is in the interest of justice for the court to at least allow an evidentiary hearing for the petition to go forward on the marriage where there is direct and cross-examination of the people involved that would give the government a chance to be able to address those very concerns that would give everyone a chance to be able to establish and evaluate exactly the concerns of the court as well as to bring in those police officers back then who were involved in this case who could actually further explain the circumstances that took place. Unfortunately, I was not the trial attorney. I came in much later as the court is aware. Certainly I may have done some things much differently. Does it matter as we review it does time have any factor is time a factor in our review? The recantation came not a few months after not a few days after not, you said when they reached maturity, but they've been mature a lot longer it didn't take 14 years for them to reach maturity. I understand that, Your Honor. I can't say when the magical year would have happened when they would have realized the errors of their ways and unfortunately I wasn't on the case sooner to be able to investigate this fact, but I can say that procedurally unless the substandard is applied here, Mr. Adams has problem. I do concede that. There has been a delay, but part of the delay had to do with Mr. Adams' indigency his inability to be able to afford counsel, which is a problem with a lot of indigent defendants who may be innocent but yet have, don't have the resources necessary to retain counsel. Also the fact that these individuals had to be found when I came on the case, we had to locate them and then locating them, I had no idea what they were going to say, frankly. I frankly went to Mr. Adams' aid because he came Mr. Smith, we appreciate your advocacy your time has expired and thank you very much. Well, and I thank the court for your time. We'll now hear from the government. Good morning. Deputy Attorney General Deborah Chuang on behalf of Respondent Appelli, C.M. Harrison, Warden. I'd like to just point out that our 28-J FRAP 28-J letter was simply to point out that the schlup standard is what does govern in this case, but more importantly, this there was language in the Smith v. Baldwin case that said that rejected the novel approach of simply accepting affidavits provided by the petitioner at face value. Now, this was what Chief Justice Roberts had also said in House v. Bell in his concurrence and we simply wanted to point it out to the court that this was a recent en banc decision. That was a recent what? I'm sorry? Your voice dropped. Oh, I'm sorry. It was a recent  decided en banc and written by Judge Smith. Judge Ferris had a question about how we should account for the timing of when these declarations were submitted and certainly timing should be considered as to the credibility of these recanting declarations. They were submitted quite late and in Herrera v. Collins Justice O'Connor had pointed out that it is quite suspect when declarations are submitted declaring actual innocence or somebody's innocence late in the game and in Schlupp v. Dillow actually the Supreme Court said at page 869 the court may consider how the timing of the submission and the likely credibility of the affiance bear on the probable reliability of that evidence. I believe that the issue of whether petitioner had met his burden of showing actual innocence under Schlupp v. Dillow is well briefed in Respondent Pelley's brief and it was also set out in great detail by the district court in the supplemental report and recommendation that it adopted from the magistrate judge's supplemental report and recommendation. Unless there are any questions on the first issue of whether petitioner had met his burden under Schlupp v. Dillow I'd like to just briefly touch on the second issue of whether an evidentiary hearing should have been granted. Could I just ask one question, counsel? If the government were to pick what it believes is the strongest evidence that the defendant in this case cannot meet the threshold standard of Schlupp, what would that be? Well certainly the government would probably point out to the immediate statements of McDowell to the police after his identification probably more than one piece of evidence your honor and maybe this is part of it is that the habeas court considers all of the evidence, old, new, incriminating, exculpatory, and whether it's admissible that's what under Schlupp and also House but there's the statement of McDowell to the police immediately when the police talked to him his identification of petitioner's photograph from a photographic display also his preliminary hearing testimony, his trial testimony and the testimony of the officers that corroborated all of this testimony and as well as Thompson's preliminary hearing testimony there was also substantial evidence of the consciousness of guilt petitioner repainted his car the very next day he left California and he presented false identification when he was arrested in Seattle and denied that he was Kleinex Adams unless there are any questions that's fine, thank you the district court in this case exercised sound discretion in not granting an evidentiary hearing simply alleging new evidence does not entitle one to an evidentiary hearing here the Schlupp vs. Delo clearly makes it not mandatory for the district court to hold an evidentiary hearing it said that the district court could hold one if it deemed that course advisable in this case the district court did not deem it to be advisable and it was within its wide discretion because here the California Court of Appeal found those recanting declarations to be not credible the petitioner did not overcome a presumption of correctness with clear and convincing evidence of that presumption of factual finding of being not credible that finding in combination with the trial record provided ample evidence to refute petitioner's claim of actual innocence unless there are any other questions I would submit I don't believe there are any questions thanks to both of you whoever needed to go to the Superior Court we hope you get there in time and this case is submitted thank you both we will next hear United States vs. Aram Barsoomian
judges: Farris, Smith, Holland